UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:21-CR-00519-RWS |
| ) | |
| BRIAN BROCK, ) | |
| ) | |
| Defendant. ) | |

**GUILTY PLEA AGREEMENT**

**COME NOW**, the parties, and hereby agree as follows:

**1. PARTIES**

The parties are defendant Brian Brock (hereinafter "Defendant"), represented by defense counsel Evan Greenberg, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA**

Pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, in exchange for Defendant's voluntary plea of guilty to Count I and II of the Indictment, the Government agrees no further federal prosecution will be brought in this District relative to Defendant's violations of

1

federal law, known to the United States at this time, arising out of the events set forth in the indictment.

In addition, the parties agree the U.S. Sentencing Guidelines Total Offense Level analysis, agreed to by the parties herein, is the result of negotiations and led, in part, to the guilty plea. The parties further agree that they will jointly request a sentence below the U.S. Sentencing Guidelines range (a combination of the "Total Offense Level" and the "Criminal History Category") as ultimately determined by the Court pursuant to any chapter of the Guidelines and 18 U.S.C. § 3553(a). **The Parties will jointly request a sentence of 78 months imprisonment at the time of sentencing**. The parties understand the Court is neither a party to nor bound by the sentencing recommendations agreed to in this document.

### 3.  ELEMENTS

As to Count I, Defendant admits to knowingly violating 21 U.S.C. § 846, admits there is a factual basis for the plea, and fully understands the elements of the crime are as follows:

- **A.** *One*, that on or before October 1, 2019, Defendant reached an agreement or came to an understanding to distribute 3,4-methylenedioxymethamphetamine (MDMA), a Schedule I controlled substance, and ketamine, a Schedule III controlled substance; and
- **B.** *Two*, that Defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and
- **C.** *Three*, that joined in the agreement or understanding while knowing the purpose of the agreement or understanding.

As to Count II, Defendant admits to knowingly violating 21 U.S.C. § 841(a)(1), admits there is a factual basis for the plea, and fully understands the elements of the crime are as follows:

- **A.** *One*, On or about November 26, 2019, within the Eastern District of Missouri, Defendant was in possession of actual methamphetamine; and
- **B.** *Two*, Defendant knew that he was in possession of a controlled substance; and

    C. *Three*, Defendant intended to distribute some or all of the actual methamphetamine to another person; and

    D. *Four*, the amount of actual methamphetamine involved was more than 50 grams.

## 4.  FACTS

The parties agree the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial.  These facts may be considered as relevant conduct pursuant to Section 1B1.3:

    **A.  Formation of a Drug Shipping Conspiracy Involving Defendant.**

Defendant and an unnamed accomplice (hereinafter "Accomplice"), who at one point attended high school together, reconnected on an online dating website in February 2019. At the time, Accomplice was a United States Postal Service Letter Carrier. By an unknown date in October 2019, Defendant enlisted Accomplice in the importation, smuggling, and distribution of ecstasy (a/k/a MDMA) and ketamine from an overseas, German-based drug supplier. Their agreement was such: Accomplice agreed to provide Defendant with addresses on her delivery route, drug-containing packages would then be shipped to these addresses by the international supplier, and, upon arriving at the post office, each package would be scanned by Accomplice as "delivered" though, instead, being hand-delivered by Accomplice to Defendant somewhere along the delivery route. Defendant would immediately forward the packages on at the direction of his contact, a California-based darkweb distributor, essentially acting as a middleman between the German supplier and the California distributor. Accomplice was to receive $1,000 per package delivered to Defendant, whereas Defendant was to receive at least $2,000 per package from the California distributor.

3

### B. Confronting Defendant and Unnamed Accomplice About Their Roles in The Drug Shipping Conspiracy.

On Wednesday, November 13, 2019, Customs and Border Protection (CBP) interdicted one of these packages—International Package CY521395245DE ("Subject Package #1")—after it entered into the International Service Center in Chicago, Illinois. An inspection of the contents of that package identified metal canisters inside loaded with MDMA. Subject Package #1 was destined for 713 Briar Lane, Catawissa, Missouri 63015; however, the name on the package, addressed to a "Johnathan England," was not a name associated with this address. Investigators determined Accomplice was scheduled to deliver Subject Package #1. On Tuesday, November 26, 2019, law enforcement conducted active surveillance on Accomplice while she conducted her mail delivery routine. Agents determined not to follow through with the controlled buy of Subject Package #1 and instead approached Accomplice asking if she would speak to them about their investigation. Accomplice agreed, stating "I'll tell you everything you want to know."

After being read her legal rights, and agreeing to speak without legal counsel present, Accomplice admitted to working with Defendant to facilitate the delivery of international drug packages. She stated she was expecting at least three packages that week. Accomplice admitted she would scan the subject packages as delivered while at the Villa Ridge Post Office, and then hand-deliver them to Defendant while on her route—all while knowing narcotics, specifically MDMA and/or ketamine, were contained inside. Accomplice acknowledged providing at least six fictional names and addresses to facilitate the ongoing conspiracy—each tied to Subject Packages #1 through #6, described herein. Accomplice further noted that she was at Defendant's residence the night before and observed what she believed to be methamphetamine on a table. As to Subject

4

Package #1 specifically, Accomplice agreed to cooperate with law enforcement and contacted Defendant on her cell phone to complete its delivery at a nearby Dollar General store. The delivery was made to Defendant, who was then taken into custody by surveilling law enforcement.

Defendant also agreed to speak with agents. He, too, admitted he was waiting for packages he knew to contain narcotics. He further admitted he had purchased multiple pounds of methamphetamine from the aforementioned California darkweb distributor over a preceding one-year period that eventually led to the conduct of the charged conspiracy, whereby the distributor enlisted Defendant as a middleman to assist in receiving packages in Missouri—to be forwarded to California—after the distributor had confronted several instances of international packages being intercepted when mailed directly to California. To his credit, Defendant immediately agreed in writing to a consensual search of his house in Hillsboro, Missouri, while admitting that multiple ounces of methamphetamine were stored there. Defendant's residence was searched the same day—November 26, 2019. Approximately 173.84 grams of methamphetamine was seized, lab tested at varying purities in the range of 89-99% (totaling 170.76 grams of actual methamphetamine). Testimony at trial would establish these are distributive quantities and not merely for personal use.

### C.  Interception of Six Total Packages Involved in Said Drug Shipping Conspiracy.

Through their investigation, agents were able to locate several additional inbound drug shipments connected to the conspiracy. On November 27, 2019, agents found International Packages CY519236126DE (Subject Package #2) and CY522160277DE (Subject Package #3) at the Villa Ridge Post Office. They also found International Package CY521054731DE (Subject Package #4) waiting for delivery. All matched tracking numbers provided by the German supplier

5

and/or fictional names and addresses provided by Accomplice. On November 29, 2019, agents conducted review of USPS business records associated with Subject Packages #1 through #4 and found additional associated packages, including International Packages CY522255893DE (Subject Package #5) and CY523153604DE (Subject Package #6).

On Monday, December 2, 2019, Judge Cohen—of this Court—issued federal search warrants on Subject Packages #1 through #4. Narcotics, as detailed below, were found inside purporting to be various sporting goods including protein bars and mass gainers. Additionally, Judge Cohen ordered the installation of a GPS and beeper tracking device on Subject Package #1, which was recreated by law enforcement to match the weight of the original package. All four packages were forwarded on to the California distributor in an effort to conduct further investigations of that distributor.

On Tuesday, December 3, 2019, CBP confirmed they had located Subject Package #5 at the International Mail Facility in Newark, New Jersey. CBP confirmed that narcotics, as described below, were found inside. And on Friday, December 6, 2019, agents located Subject Package #6 at the USPS National Distribution Center in Hazelwood, Missouri. On Monday, December 9, 2019, Judge Mensah—of this Court—issued a federal search warrant on Subject Package #6. Like the other packages, narcotics were found inside masquerading as sporting goods. And, like the other packages, Subject Packages #5 and #6 matched tracking numbers provided by the German supplier and/or fictional names and addresses provided by Accomplice.

Lab testing confirmed the following drug quantities in each package referenced above: (1) Subject Package #1—3.97 grams MDMA; (2) Subject Package #2—2,485.10 grams Ketamine; (3) Subject Package #3—4,998.31 grams MDMA; (4) Subject Package #4—4,881.60 grams

6

MDMA; (5) Subject Package #5—4,991.90 grams MDMA; and (6) Subject Package #6—4,996.70 grams MDMA.

### D. Summary of Drug Quantities Seized in Said Drug Shipping Conspiracy and at Defendant's Residence.

The total quantity of MDMA involved in the conspiracy is 19,872.48 grams (Subject Packages #1 through #6). The total quantity of ketamine involved in the conspiracy is 2,485.10 grams (Subject Package #2). And the total quantity of actual methamphetamine possessed for distribution by Defendant is 170.76 grams (Search of Defendant's Hillsboro, Missouri, Residence). Testimony at trial would establish these are distributive quantities and not merely for personal use.

### 5. STATUTORY PENALTIES

As to Count I, Defendant fully understands the maximum possible penalty provided by law, pursuant to 21 U.S.C. § 841(b)(1)(C), for the crime to which Defendant is pleading guilty is: imprisonment of not more than 20 years; a fine of not more than $1,000,000.00; or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than three (3) years.

As to Count II, Defendant fully understands the maximum possible penalty provided by law, pursuant to 21 U.S.C. § 841(b)(1)(A), for the crime to which Defendant is pleading guilty is: imprisonment of not more than life; a fine of not more than $10,000,000.00; or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than five (5) years. **Defendant also fully understands the crime in Count II to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of at least ten (10) years, unless 18 U.S.C. § 3553(e) should apply**.

### 6.  U.S. SENTENCING GUIDELINES (2018 MANUAL)

Defendant understands the offenses are affected by the U.S. Sentencing Guidelines (U.S.S.G.) and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category.  The parties agree the following are the U.S.S.G. Total Offense Level provisions that apply:

**A.  Chapter 2 Offense Conduct**

**(1)  Base Offense Level:**  The parties agree that, as to Counts I & II, the **Base Offense Level is 34**. This is because, by operation of the aggregating mechanics of Sections 3D1.2(d) and 3D1.3(b), the parties agree the quantity of *3,4-methylenedioxymethamphetamine* (MDMA) for which Defendant is accountable, including relevant conduct, is 19,872.48 grams, the quantity of ketamine for which Defendant is accountable, including relevant conduct, is 2,485.10 grams, and the quantity of actual methamphetamine for which Defendant is accountable, including relevant conduct, is 170.76 grams, which equals a converted drug weight of 13,353.92 kilograms and, thus, falls between Section 2D1.1(c)(3)'s range of 10,000 kilograms to 30,000 kilograms of converted drug weight.

**B. Specific Offense Characteristics**

The parties agree that the following Specific Offense Characteristics apply:

**U.S.S.G. § 3B1.1(c)** – **Two (2) levels should be added** because Defendant was an organizer, leader, manager, and/or supervisor in a criminal conspiracy in that he had a direct part in the recruitment of an accomplice and exercised a degree of control over said accomplice in furthering the conspiracy's goals.

8

**U.S.S.G. § 2D1.1(b)(16)(C)** – **Two (2) levels should be added** because Defendant, in receiving an adjustment under Section 3B1.1, was also directly involved in the importation of controlled substances from Germany.

### C. Chapter 3 Adjustments

The parties agree the following adjustments under Chapter 3 apply:

**(1) Acceptance of Responsibility:** The parties agree **three (3) levels should be deducted pursuant to Section 3E1.1(a) and (b)** because Defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of Defendant's intention to plead guilty. The parties agree Defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the Government receives new evidence of statements or conduct by Defendant that it believes is inconsistent with Defendant's eligibility for this deduction, the Government may, without violating the plea agreement, present said evidence to the Court and argue that Defendant should not receive all or part of the deduction pursuant to Section 3E1.1.

### D. Other Adjustments

The parties have considered that a possible 2-point reduction pursuant to Section 5C1.2 (the "Safety Valve") may be applicable. However, because Section 3B1.1(c) applies as a specific characteristic, the parties agree Section 5C1.2(4) cannot be satisfied and, therefore, the Safety Valve provision does not apply.

### E. Disputed Adjustments

The parties do not dispute any additional adjustments.

**F.  Estimated Total Offense Level:**  The parties estimate the **Total Offense Level is 35**.

**G.  Criminal History:**  The determination of Defendant's Criminal History Category shall be left to the Court.  Either party may challenge, before and during sentencing, the finding of the Presentence Report as to Defendant's criminal history and the applicable category. Defendant's criminal history is known to Defendant and is substantially available in the Pretrial Services Report.

**H.  Effect of Parties' U.S. Sentencing Guidelines Analyses:**  The parties agree the Court is not bound by the Guidelines analyses agreed to herein.  The parties may not have foreseen all applicable Guidelines.  The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement in such an event. The Government recognizes it is bound by the specific agreements made above but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or to present evidence at the Court's request.

**7.  WAIVER OF APPEAL AND POST-CONVICTION RIGHTS**

**A.  Rights to Appeal:**  Defendant has been fully apprised by defense counsel of Defendant's rights concerning appeal and fully understands the right to appeal the sentence under 18 U.S.C. § 3742.

**(1) Waiver of Non-Sentencing Issue Appealability:**  The **parties hereby waive all rights to appeal all non-jurisdictional, non-sentencing issues**, including but not limited to any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which Defendant is pleading guilty, and whether Defendant's conduct falls within the scope of the statute(s).

**(2) Waiver of Sentencing Issue Appealability:**  In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and— after determining a Sentencing Guidelines range—sentences Defendant within or below that range, then, as part of this agreement, **Defendant hereby waives all rights to appeal all sentencing issues other than the calculation of Defendant's Criminal History, but only if it affects the Base Offense Level or Criminal History Category**.  Similarly, the Government hereby waives all rights to appeal all sentencing issues other the calculation of Defendant's Criminal History, provided the Court accepts the plea, the agreed-upon Total Offense Level, and sentences Defendant within or above the resultant range.

**B.  Waiver of Habeas Corpus Relief:  Defendant agrees to waive all rights to contest the conviction or the sentence in any post-conviction proceeding**, including one pursuant to 28 U.S.C. § 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**C. Waiver of Right to Records:**  Defendant **waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case**, including any record(s) that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, and/or the Privacy Act, 5 U.S.C. § 552(a).

**8.  OTHER AGREED-UPON PROVISIONS**

**A.  Disclosures Required by the United States Probation Office:**  The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

11

**B.  Civil & Administrative Actions not Barred—Effect on Governmental Agencies:**

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**C.  Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.  These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished.

**D.  Mandatory Special Assessment:**  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a **total special assessment of $200**, which the defendant agrees to pay at the time of sentencing.  Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**E.  Possibility of Detention:**  Defendant may be subject to immediate detention pursuant to the provisions of 18 U.S.C. § 3143.

**F.  Fines, Restitution, Costs of Incarceration & Supervision:**  The Court may impose a fine, costs of incarceration, and costs of supervision.  Defendant agrees any fine imposed by the Court will be due and payable immediately.

**G.  Forfeiture of Items Seized:**  Defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States.  Defendant agrees said items may be disposed of by law enforcement officials in any manner.

**9.  ACKNOWLEDGMENT AND WAIVER OF DEFENDANT'S RIGHTS**

In pleading guilty, Defendant acknowledges, fully understands, and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence; and the right to compel attendance of witnesses.  Defendant further understands that, by entering this guilty plea, Defendant expressly waives all rights set forth in this paragraph.

Defendant fully understands that Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. Defendant's counsel has explained these rights and the consequences of waiving these rights. Defendant fully understands that, as a result of the guilty plea, no trial will occur and the only action remaining to be taken in this case is to impose a sentence.

Defendant is fully satisfied with the representation received from defense counsel. Defendant has reviewed the Government's evidence and discussed the Government's case—including all possible defenses and defense witnesses—with defense counsel.  Defense counsel has completely and satisfactorily explored all areas that Defendant has requested relative to the Government's case and any defenses.

The guilty plea could impact Defendant's immigration status or result in deportation. In particular, if any crime to which Defendant is pleading guilty is an "aggravated felony," as defined by 8 U.S.C. § 1101(a)(43), removal or deportation is presumed mandatory.  Defense counsel has advised Defendant of the possible immigration consequences, including deportation, resulting from the plea.

### 10.  VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT

This document constitutes the entire agreement between Defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case.  In addition, Defendant states no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. Defendant further acknowledges this guilty plea is made of Defendant's own free will and that Defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT

After pleading guilty and before sentencing, if Defendant commits any crime (other than minor traffic offenses), violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete, or untruthful information to the U.S. Probation Office, or fails to appear for sentencing, then the Government, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA

Pursuant to Rules 11(c) and 11(d) of Federal Rules of Criminal Procedure, Defendant understands there will be no right to withdraw the plea entered under this agreement except where the Court rejects those portions of the plea agreement that deal with charges the Government agrees to dismiss or not to bring.

| | |
|---|---|
| 19 JUL 2022<br>Date | _Shane K. Blank_<br>SHANE K. BLANK, #65787MO<br>Assistant United States Attorney |
| 7-17-2022<br>Date | _[signature]_<br>BRIAN BROCK<br>Defendant |
| 7-19-2022<br>Date | _[signature]_<br>EVAN GREENBERG<br>Attorney for Defendant |

15