**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 4:21-CR-519 RWS |
| BRIAN BROCK, | |
| Defendant. | |

**DEFENDANT'S SENTENCING MEMORANDUM**

**INTRODUCTION**

Defendant Brian Brock is a 45-year-old father of two teenagers and he worked for many years as a union construction worker. He has very minimal criminal history and has never before been sentenced to any time in custody. Before his incarceration, he lived with and cared for his elderly parents: his father has dementia and his mother has limited mobility. Although Mr. Brock has struggled with substance abuse for most of his life, he did not commit any serious criminal conduct until the late 2010s. At the time, his marriage was failing and his financial situation was becoming increasingly unstable. He was also suffering back pain but was unable to obtain necessary surgery, and his back pain forced him to stop working his construction job, which was his only source of income. In those difficult personal and financial circumstances, he increased his drug use, and eventually chose to participate in the charged offenses. He accepted responsibility for those offenses immediately when the investigating agents contacted him: he admitted his role in the conspiracy and consented to a search of his residence, where he told the agents they would find methamphetamine. He has pleaded guilty to both offenses as charged.

1

The parties jointly recommend a sentence of 78 months. This is a significant prison term, especially for someone like Mr. Brock who has never been sentenced to incarceration before. The recommended sentence is sufficient to punish Mr. Brock for his role in the offenses and serve the goals of sentencing. Mr. Brock respectfully asks that the Court impose the recommended sentence, recommend RDAP, and recommend placement by the Bureau of Prisons in a facility as close as possible to Salem, Missouri.

## LEGAL STANDARDS

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper v. United States*, 562 U.S. 476, 487-88 (2011). "Underlying this tradition is the principle that the punishment should fit the offender and not merely the crime." *Id.* The Court has broad discretion to sentence outside the advisory Guidelines, as the Court is empowered and required to "make an individualized assessment" of a just sentence under the factors presented in 18 U.S.C. § 3553(a). *See Gall v. United States*, 552 U.S. 38, 50 (2007).

## THE FACTORS UNDER SECTION 3553(a)

**I.     Section 3553(a)(1): the history and characteristics of Mr. Brock and the nature and circumstances of the offense.**

   **A.     The history and characteristics of Mr. Brock.**

Mr. Brock is 45 years old and was raised by his parents in Missouri in what became an abusive environment when he was around eight years old. PSR ¶¶ 52-55. When Mr. Brock was in third grade, his father suffered multiple strokes that caused long-term damage to his mental health, which led to schizophrenia. He began physically abusing Mr. Brock and other members of the family. PSR ¶ 52. His father would turn on a dime, becoming abusive suddenly and

2

unexpectedly. *Id.* Mr. Brock recalls multiple instances in which his father pointed firearms at family members, and the police responded at least one time. *Id.* When the abuse escalated, Mr. Brock's mother sent Mr. Brock and his older brother to Illinois to stay with family there. *Id*. During those instances, the forced separation from his mother added to the trauma caused by his father's abuse. Mr. Brock's father eventually underwent court-ordered psychiatric treatment. *Id.* Mr. Brock dropped out of high school after eighth grade and never graduated or got a GED. PSR ¶¶ 62-63.

Mr. Brock is a father of two teenage sons, ages 17 and 19. PSR ¶ 53. Before his arrest in this case Mr. Brock had very close relationships with them. His sons distanced themselves somewhat from their father when Mr. Brock was first charged, but they remained supportive until Mr. Brock went into custody in July 2022. ECF No. 33. Mr. Brock sends letters to both of them every week but has not received any response. As Mr. Brock has expressed to his mother, he recognizes that his conduct in the instant offenses has hurt and embarrassed his sons. *See* Attachment A (11/1/2022 Letter from Gayla Brock) ("Gayla Brock Letter"). He is determined to repair his relationships with them and regain their trust.

Despite his difficult home life as a child, Mr. Brock has remained dedicated to caring for his parents. As they have aged, their health has declined—Mr. Brock's father has dementia and his mother suffers from physical limitations. Currently, they require significant assistance with day-to-day tasks. Until his incarceration in July 2022, Mr. Brock lived with his parents and helped care for them. *See* Gayla Brock Letter.

Mr. Brock has a significant history of addiction and substance abuse, which culminated in his participation in the current offenses. He began using methamphetamine at age 15 and has been struggling with addiction ever since. PSR ¶ 59. Mr. Brock was sober for several years

beginning in 2010.  Around 2015, however, he returned to using marijuana.  The following year, he began having marital problems and his physical health deteriorated significantly.  In 2017, doctors told Mr. Brock he needed back surgery for degenerative disc disease.  PSR ¶ 57.  But due to issues with his medical insurance and scheduling errors on the part of his medical provider, he never had the surgery.  *See* PSR ¶ 57.  Chronic back pain soon prevented him from working his longtime job as a construction worker.  In 2017 he was forced to stop working altogether and lost his only source of income.  PSR ¶¶ 67-68.  The combination of a failing marriage, increasing financial responsibilities, back pain without treatment, and losing his job and income all proved too much for Mr. Brock, and he returned to abusing controlled substances.  Those personal circumstances, his drug use, and his loss of legitimate income created the conditions in which he agreed to participate in the charged offenses.  Mr. Brock acknowledges that his drug use contributed to his poor judgment and the commission of the instant offenses.

  Mr. Brock has never been sentenced to custodial time before and has a very limited criminal history.  When he was 19 years old, in 1996, he was fined for a misdemeanor charge of possession of drug paraphernalia.  PSR ¶ 43.  When he was 27, in 2004, he was fined for an assault charged that resolved in municipal court.  PSR ¶ 44.  His only other prior case was a felony drug possession in 2017, for which he was placed on three years' probation with imposition of sentence suspended.  PSR ¶ 45.  The five months he has been in custody since last July is the longest he has ever been incarcerated, and his sentence in this case will be his first time being sentenced to custodial time.

  Finally, Mr. Brock accepts responsibility and demonstrates genuine remorse.  He accepted responsibility immediately upon being contacted by the investigating agents.  ECF No. 48 at 5.  He "immediately agreed" to a consent search of his residence and told agents they

would find methamphetamine there.  *Id.*  Mr. Brock has reflected on his bad choices and what it cost him and his family.  His mother has spoken with him frequently since his incarceration, and he has told her how much he regrets his bad decisions.  *See* Gayla Brock Letter.  Mr. Brock regrets not only breaking the law, but also having hurt the people he loves.  *Id.*

In sum, Mr. Brock's history and characteristics reveal a man who was raised in an abusive and unstable home, and who nevertheless grew to be a supportive father and caring son. He accepts responsibility for choosing to participate in the charged offenses and has gained insight into how his decision to use drugs contributed to his criminal conduct.  He feels deep and genuine remorse that he has expressed to his closest family members.

**B.     The nature and circumstances of the offense.**

Mr. Brock purchased methamphetamine from a California darkweb distributor who eventually enlisted Mr. Brock to serve as a middleman in the charged conspiracy.  ECF No. 48 at 5.  Because the distributor's packages were being intercepted en route to California, he began shipping packages to Missouri, where Mr. Brock would accept delivery and then forward them to California.  *Id.*  By October 2019, Mr. Brock had arranged for an accomplice, who worked as a letter carrier for the United States Postal Service, to receive the packages and give them to Mr. Brock so he could forward them to California.  *Id.* at 4.  Mr. Brock received at least $2,000 per package, and the accomplice received $1,000.  *Id.*  On November 13, 2019, agents intercepted one of the packages, confronted the accomplice and then Mr. Brock, and searched Mr. Brock's residence where they found about 173 grams of methamphetamine.  *Id.* at 4-5.

**II.    Section 3553(a)(2): a sentence sufficient but not greater than necessary to meet the goals of sentencing.**

Section 3553(a)(2) directs the Court to evaluate a sentence sufficient "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the

offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" Courts should impose a "sentence sufficient, but not greater than necessary" to meet those purposes.  18 U.S.C. § 3553(a).  Mr. Brock respectfully submits that the recommended sentence is sufficient but not greater than necessary to satisfy those statutory goals.

  The recommended 78-month sentence reflects that the offenses are serious, and that they contributed to the societal ills that illicit drug use and distribution cause.  This length of incarceration is a significant custodial term, especially for someone like Mr. Brock who has never been sentenced to incarceration before.  The recommended sentence will take a heavy personal toll on Mr. Brock, as it will deprive him of the ability to be with his family members at significant stages of their lives.  Mr. Brock's sons, ages 17 and 19, are just starting their formative college years, and Mr. Brock will be absent for all of them.  Mr. Brock will also have to confront the implications of his incarceration on his parents' lives, as he will no longer be able to help them with their medical and daily needs in the way he did before his arrest.  *See* Gayla Brock Letter; PSR ¶ 52.  As a result, this sentence will serve the goals of general and specific deterrence.

  The recommended sentence is also sufficient to protect the public, as Mr. Brock will remain incarcerated for more than six years, followed by at least five years of supervised release.  Mr. Brock's minimal criminal history demonstrates that he was able to live about 20 years of his adult life without committing serious crimes (again, his only offenses during those years involved his own drug use and a misdemeanor assault at age 27).  Mr. Brock's history suggests he can avoid criminal behavior upon his release after 78 months.  Participation in RDAP, which

6

Mr. Brock desires and Probation recommends, PSR ¶ 61, will also provide Mr. Brock with correctional treatment and reduce the risk of his committing drug-related crimes upon his release.

The recommended sentence is sufficient even though it falls below the guidelines range. In the PSR, Probation notes several factors that might warrant a variance from the guidelines range: Mr. Brock's childhood history of being abused, his history of substance use, his low education level, and the fact he has never previously been incarcerated. PSR ¶ 96. In addition, the parties agree that the converted drug weight makes the base offense level 34 under § 2D1.1. ECF No. 48 at 8. That offense level, however, depends to a great extent on drug quantity, which—while a relevant factor in determining punishment—is not always a good measure of culpability, as some courts have begun to recognize. *See, e.g.*, *United States v. Johnson*, 379 F.Supp.3d 1213, 1220 (M.D. Ala. 2019) ("[O]ver the past decade, courts have increasingly recognized that drug quantity is a poor proxy for culpability." (quotation marks omitted)). The defendant's role in the offense is a better measure of culpability than the quantity of the drugs involved. *Id.* at 1222 ("This court therefore agrees with other courts that the drug-trafficking guidelines suffer from an over-emphasis on quantity and under-emphasis on role in the offense." (quotation marks omitted)). Here, Mr. Brock's role in the conspiracy offense was as a "middleman," receiving packages of drugs and "immediately" forwarding them for delivery to California. ECF No. 48 at 3; *see also* PSR ¶ 14. He did not actively plan the organization's activities or plan for its growth. He was paid per package rather than as a percentage of the organization's profits. ECF No. 48 at 3. Mr. Brock played an important role in the delivery of packages and should face consequences for serving that role, but the quantity of drugs in each package is not a good measure of his culpability.

To be clear, the offense level in the plea agreement is correct—Mr. Brock merely notes that, in light of his role in the offense and the guidelines' over-emphasis on quantity, the offense level produces a guidelines range that is greater than necessary to serve the purposes of sentencing under 18 U.S.C. § 3553.  The recommended sentence of 78 months is sufficient under section 3553(a), and Mr. Brock respectfully asks that the Court follow the parties' joint recommendation for a 78-month sentence.

## CONCLUSION

Mr. Brock is a devoted father and caring son who has long struggled with substance abuse.  He accepts full responsibility for his behavior, just as he has since the investigating agents first contacted him.  Mr. Brock has already paid a significant price for his offenses, as his sons no longer speak with him, he is no longer able to care for his aging parents, and he has been incarcerated for the past five months.  The recommended sentence is reasonable and sufficient to serve the goals of sentencing, and Mr. Brock respectfully asks that the Court impose the recommended sentence, recommend RDAP, and recommend placement by the BOP as close as possible to Salem, Missouri.

Respectfully submitted,

Dated: December 2, 2022

/s/ Evan C. Greenberg
Evan C. Greenberg #271356 (CA)
The Law Offices of Evan Greenberg, LLC
231 S. Bemiston Ave., Suite 800
St. Louis, MO 63105
Phone: 650-485-4693
Fax: 650-326-9704
Email: EGreenberg@nbo.law
Attorney for Defendant